IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT STEVEN POPE,<br><br>Defendant. | Case No. 1:23-CR-171 |

## STATEMENT OF FACTS

The United States and the defendant, Robert Steven Pope (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From at least in or about May 15, 2017 through at least July of 2020, in the Eastern District of Virginia and elsewhere, the defendant Robert Steven Pope having devised and intending to devise a scheme and artifice to defraud, and to fraudulently obtain money and property from another by means of materially false and fraudulent pretenses, representations, and promises, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, for the purposes of executing such scheme and artifice to defraud.

2. In furtherance of his scheme to defraud, the defendant caused multiple interstate wire communications to occur which originated, passed through, or terminated in the Eastern District of Virginia.

3. Robert Steven Pope of Aldie, Virginia, was an attorney admitted to the Virginia State Bar. He was first licensed to practice law in the Commonwealth of Virginia in 2001.

Effective November 29, 2021, the Virginia State Bar Disciplinary Board revoked Pope's license to practice law.

4. On or about March 14, 2014, the defendant incorporated Robert S. Pope, LLC with the Virginia State Corporation Commission. The defendant was the sole member and manager of this professional limited liability company which was based in Aldie, Virginia.

5. On or about July 28, 2014, the defendant opened a Virginia IOLTA trust account (x3601) at Sandy Spring Bank of Olney, Maryland, for Robert S. Pope, PLLC (the "trust account"). The defendant was the sole authorized signatory.

6. On or about May 22, 2017, the defendant entered into an Escrow Agreement on behalf of his company, Robert S. Pope, PLLC, with a husband and wife (the client) who had sold certain real property located in Sterling, Virginia, as a result of their divorce. The defendant, acting as escrow agent through his company, agreed to hold the proceeds of that sale in the sum of $289,084.00 ("the funds") without interest in escrow for the client.

7. On or about May 26, 2017, in Philadelphia, Pennsylvania, a real estate settlement company wired approximately $291,684.01 of the client's funds into the trust account at Sandy Spring Bank in Olney, Maryland. Before receiving that wire, the balance in the defendant's trust account was $0.00.

8. Starting in September of 2018 and continuing through September of 2019, the defendant transferred the funds held in the trust account into other accounts he controlled at Sandy Spring Bank. One account was held in the name of Piedmont Red LLC (x6001) and the second was another attorney trust account held in the name of Robert S. Pope PLLC (x8701).

9. The defendant transferred approximately $250,161.93 of the client funds from the trust account into the Piedmont Red account from September 2018 through June 2019 and

approximately $48,697.08 into the x8701 account from September 2018 through August 2019. The defendant used the Piedmont Red account in connection with his unsuccessful attempts to make money "flipping" houses, that is by buying residential properties, fixing them up and re-selling them quickly.

10.  For almost one year between October 2018 through September 2019, the defendant wrote approximately 60 checks from the Piedmont Red account to various recipients for personal expenses totaling approximately $259,605. The bulk of these checks were made payable to various lenders (including "hard money" lenders) and brokers in order to pay off pre-existing debts the defendant had incurred from borrowing money for flipping houses or to make interest payments on loans obtained to finance the house flipping venture. At least one check for $10,000 was made payable to an equipment rental business in September 2019 for the installation of a septic system at a residence in Purcellville, Virginia.

11.  By October 21, 2019, the client-husband for whom the defendant acted as escrow agent had passed away. By the end of that same month, the defendant had mis-appropriated the client's funds from the trust account and the account had a remaining balance of $100.00.

12.  Starting after the husband's death in October 2019 and continuing through April of 2020, the client-wife (or wife) repeatedly contacted the defendant via email and telephone to request the escrow funds. The wife provided copies of the Property Settlement Agreement and other records the defendant requested before releasing the funds. However, the defendant repeatedly rebuffed her requests for return of the funds. To justify the delay in returning the escrow funds, the defendant claimed he had concerns about certain probate laws in order to stall for more time. All the while, the defendant knew full well that he had already spent the bulk of

the funds, if not all of them, that he was supposed to have held in escrow for the benefit of the wife on his flailing house flipping ventures.

13. On or about March 18, 2020, and in response to the wife's request to see a current statement for the trust account, the defendant emailed her a Sandy Spring bank deposit record dated March 17, 2020. This record purportedly showed an account balance of $298,728.00 but the defendant had altered and manipulated the original record. At the time the defendant sent this email and bank statement to the wife, he knew that it was a false and fraudulent document because by that time, he had misappropriated all or most of the original funds in the trust account.

14. On or about March 30, 2020, the defendant received an incoming wire of $200,000 from his father. This increased the balance of his trust account to $201,728.00 from its previous balance of $1,728.00.

15. Despite her repeated written requests for disbursement of the escrow funds, the defendant continued to rebuff the wife. She subsequently retained an attorney to help her get the funds back from the defendant. In email correspondence, the defendant repeatedly told the wife and her attorney he was concerned about creditors' making a claim against the decedent husband's estate as a justification for failing to return the escrow funds. However, as the defendant well knew, by September of 2019, he had already spent the escrow funds on the repayment of loans and interest related to his own house flipping ventures.

16. On or about April 7, 2020, the wife's attorney sent the defendant an email requesting disbursement of the funds. The attorney provided signed copies of the wife's authorization and direction to disburse the funds. In response, the defendant expressed difficulties in doing so because he claimed that he did not have any checks, the Chantilly, Virginia bank branch

was closed and he had concerns about claims by creditors. However, at this time, the defendant knew that the escrow account did not contain the full amount of the funds deposited there initially.

17. On April 13, 2020, and in an effort to accumulate sufficient funds to disburse to the client-wife, the defendant received an incoming wire to the trust account in the amount of $30,000 from his father. This deposit increased the balance in the trust account to $231,728.00.

18. On or about April 27, 2020, and in order to increase the balance in the trust account, the defendant deposited approximately $48,000 in cash that he received from his mother.

19. The following day, the defendant appeared in person at a Sandy Spring Branch and withdrew approximately $279,728.00 from the trust account in the form of a cashier's check made payable to the client-wife (check #301866).

20. On or about June 3, 2020, the client-wife made a formal complaint about the defendant's failure to return the escrow funds to the Virginia State Bar. In response to inquiries, the defendant repeated the claim about his concern for claims by creditors, despite knowing that he had misappropriated the funds, and represented to the Bar that he was working with the wife's counsel to prepare an accounting and an indemnity agreement.

21. In or about mid-June of 2020, the defendant remitted approximately $279,728.00 to the wife but by July of 2020, the defendant still had not paid her approximately $10,106.01 of the remaining funds.

22. In response to the defendant's representations, the Virginia State Bar advised the wife in June and July of 2020 that they would take no action against him. However, a second individual with knowledge of the defendant's actions made a separate bar complaint alleging the defendant lied and falsified bank statements in order to buy time to replace the escrow funds

belonging to the wife that he used for himself. As a result, the Virginia State Bar re-opened an investigation into the wife's initial complaint.

23. On or about July 30, 2020, the defendant remitted approximately $10,106.01 to the wife in the form of a cashier's check from Sandy Spring bank (check #307670).

24. On or about November 24, 2021, the defendant freely and voluntarily consented to the revocation of his Virginia bar license in connection with an ongoing disciplinary investigation into the fraudulent conduct described throughout this Statement of Facts.

25. On or about November 29, 2021, the defendant subscribed and swore to a two-page Affidavit of Consent to Revocation submitted to the Virginia State Bar in which he admitted to misappropriating funds in his trust account, rebuffing the wife's attempts to recover her funds, falsely showing sufficient funds on account, providing her a trust account record to make it appear as if he had the funds and concealing the misappropriation.

26. In total, the defendant misappropriated at least $291,684.00 in client funds received into his IOLTA trust account in violation of his fiduciary responsibilities as escrow agent.

27. Although the defendant had misappropriated the escrowed funds, he continued to charge a handling fee maintain the funds in escrow. Initially, the defendant charged $100 per month but later reduced it to $50 at the wife's request. The defendant eventually repaid the wife approximately $289,834.01 of the misappropriated funds but did not pay the escrow fees until August of 2023.

28. In this case, the Virginia State Bar determined that the defendant was not entitled to the escrow fees.

29. On or about August 15, 2023, the defendant paid $1,850.00 to the Virginia State Bar Client Protection Fund ("the Fund"). The Fund provides a system where clients – or other

persons owed a fiduciary duty by an attorney – could be reimbursed for all or part of losses incurred due to the dishonest conduct of a member of the Virginia State Bar. The Client Protection Fund Administrator confirmed receipt of the defendant's payment in that same amount on August 24, 2023.

30. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

31. The actions of the defendant in furtherance of the scheme and artifice to defraud, including but not limited to the acts recounted above, were done willfully, knowingly and with the specific intent to violate the law, and not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: September 25, 2023
*November 15, 2023*

By: *Kimberly R. Pedersen*
Kimberly R. Pedersen
Assistant United States Attorney



After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, ROBERT STEVEN POPE, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
ROBERT STEVEN POPE

I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Peter D. Greenspun
Attorney for ROBERT STEVEN POPE

8